## APPEAL OF H. FENDRICH, INC.

Docket No. 4254. Submitted September 22, 1925. Decided November 18, 1925.

> Taxpayer paid the sum of $5,000 for the use of certain machines under a lease contract. *Held,* that such amount may not be deducted as an ordinary and necessary expense but must be exhausted pro rata over the life of the contract.

*Conrad Wolf, Esq.,* for the taxpayer.
*Willis D. Nance, Esq.,* for the Commissioner.

Before GRAUPNER, TRAMMELL, and PHILLIPS.

1920, in the amount of $3,742.32.   The question involved is whether the amount of $5,000, paid in 1920 for the use of certain machines under a lease contract, may be deducted as an expense in that year, or whether the amount was a capital expenditure to be spread over the period of the lease and an aliquot part taken each year as exhaustion.

FINDINGS OF FACT.

The taxpayer is an Indiana corporation with its principal place of business at Evansville.   It was organized April ¨, 1920, for the purpose of manufacturing cigars.   It succeeded a partnership which had conducted the same business.

During the existence of the partnership bands were placed by hand on the cigars which it manufactured.   About the time that the corporation was organized a mechanical device for banding cigars was patented and was placed on the market by the International Banding Machine Co., a New York corporation.

On April 20, 1920, the taxpayer, as lessee, entered into an agreement with the International Banding Machine Co., as lessor, for the use of 10 of the banding machines for a period of five years.   The material part of the agreement which gives rise to the controversy here reads as follows:

1. The lessor will deliver said machine or machines hereby leased to the lessee f. o. b. in the Borough of Manhattan, New York City, on or before the 15th day of June, 1920. * * *

2. The lessee agrees to pay the lessor upon the execution of this agreement five hundred ($500) dollars in New York funds for each machine covered hereby, and shall not at any time after the delivery to it f. o. b. as aforesaid, of each respective machine, have or claim repayment of said sum or any part thereof.

These provisions were followed by others relating to the ownership of the leased machines, their use and maintenance, and the following:

6. The leased machinery shall be used only in the banding of cigars, and the lessee shall pay the lessor throughout the full term of this agreement, the sum of $150.00 per quarter-yearly per machine in advance for the use of said leased machinery, commencing on the date when the said leased machinery is delivered to the lessee.

7. The term of this agreement shall be five years from the date or dates of deliveries * * *.

The initial payment of $500 per machine, a total of $5,000, was paid by the taxpayer at the time the agreement was executed, and the machines were delivered to it substantially in accordance with the agreement.

The taxpayer charged the initial payment of $5,000 to expense and claimed the full amount as a deduction from gross income in the

return filed for 1920. The Commissioner allowed a deduction of only $666.67, on the theory that the payment should be prorated over the life of the agreement, which resulted in the deficiency here involved.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

GRAUPNER: In its petition the taxpayer contends that the sum of $5,000 was paid for the privilege of securing the lease. At the hearing it claimed that the $5,000 was paid for the purpose of expediting the manufacture of the machines by a company which was then starting in business, and to secure prompt delivery. Taxpayer also asks that we hold the agreement to be divisible.

It appears to us immaterial whether or not the agreement was divisible. The cases cited by the taxpayer involve contracts a part of which were valid and a part invalid. We are not concerned with the validity of any part of the contract executed by the taxpayer, particularly as it appears that the requirements of the contract have been fulfilled by both parties. In asking us to find that the payment of $5,000 was made for a purpose other than to secure a license to use the patented machines, the taxpayer is asking that we read into the agreement something that will vary its plainly expressed terms and to construe the meaning of the agreement in a manner radically different from the meaning which would naturally be arrived at by placing upon the terms thereof their ordinary and accepted meaning. There appears to us to be no ground for such a construction, as the instrument on its face is complete and we can find in it no ambiguity which needs an interpretation other than that to be gained by the clear import of its terms.